

# THE ATTORNEY GENERAL
## OF TEXAS

GROVER SELLERS

AUSTIN 11, TEXAS

ATTORNEY GENERAL

Honorable Morris W. Hassell
County Attorney
Cherokee County
Rusk, Texas

Dear Sir:

Opinion No. O-6999
Re: (1) Whether it is mandatory that
commissioners' court call a local op-
tion election on the sale of beer up-
on petition bearing 547 signatures;
(2) Whether such petition is valid if
not reinforced by commissioners' court's
own motion; (3) Whether county clerk
must verify signatures as those of
qualified voters.

We have received your opinion request, and your letter is quoted
is quoted as follows:

"The County Clerk of this county has just had filed with him the follow-
ing form petition:

"'TO THE COMMISSIONERS' COURT OF CHEROKEE COUNTY, TEXAS:
We, the undersigned, being qualified voters of Cherokee County, Texas,
hereby request the Honorable Commissioners' Court of Cherokee County,
Texas, to order an election to determine whether or not the sale of beer
that does not contain alcohol in excess of four (4%) per centum by weight
shall be legalized in Cherokee County, Texas.

We represent that no local option election has been held in Cherokee County,
Texas, during the past one year before the presenting of this petition.

Wherefore, we pray that this Court order such election in accordance with
the provisions of our laws.'

"This is followed by 547 signatures. This petition was not secured from
the County Clerk, and of course does not bear his signature and seal nor
did anyone make application to him for a petition as I understand the law
to contemplate. Nothing further is filed with the County Clerk other than
the above petition with the signatures which do not have any addresses
shown.

"Is it mandatory that the Commissioners' Court of this County call an el-
ection based upon the above described petition? Would an election called

upon the above described petition be valid if the Commissioners' Court did not also order the election upon their own motion? Is the County Clerk required to check the signatures on said petition to determine whether or not the signers of such petition are in fact qualified voters of the County when the petition does not show their addresses?"

Article 666, Sec. 32, Penal Code, provides:

"The Commissioners' Court of each county in the state upon its own motion may order an election wherein the qualified voters of any county or any justice precinct or incorporated town or city may by the exercise of local option determine whether or not the sale of alcoholic beverages of one or more of the various types and alcoholic content shall be prohibited or legalized within the prescribed limits of such county, justice precinct, or incorporated town or city; and local option election shall be called by the Commissioners' Court upon proper petition as herein provided. Upon the application of any one or more qualified voters of any county, justice precinct, or incorporated town or city, the county clerk of such county shall issue to the applicant or applicants a petition to be circulated among the qualified voters thereof for the signatures of those qualified voters in such area who desire that a local option election be called therein for the purpose of determining whether the sale of alcoholic beverages of one or more of the various types and alcoholic content shall be prohibited or legalized within the prescribed limits of such county, justice precinct, or incorporated town or city. The petition so issued shall clearly state the issue or issues to be voted upon in such election; each such petition shall show the date of its issue by the county clerk and shall be serially numbered, and each page of such petition shall bear the same date and serial number, and shall bear the seal of the county clerk. The county clerk shall deliver as many copies of said petition as may be required by the applicant and each copy shall bear the date, number and seal on each page as required in the original. The County Clerk shall keep a copy of each such petition and a record of the applicants therefor. When any such petition so issued shall within one hundred and twenty (120) days after the date of issue be filed with the clerk of the Commissioners' court bearing the actual signature of as many as ten (10%) per cent of the qualified voters in any such county, justice precinct, incorporated town or city, together with a notation showing the residence address of each of the said signers, taking the votes for Governor at the last preceding general election at which time Presidential electors were elected as the basis for determining the qualified voters in anu such county or political subdivision, it is hereby required that the Commissioners' Court at its next regular session shall order a local option election to be held upon the issue or issues set out in such petition. It shall be the duty of the county clerk to check the names of the signers of any such petition and the voting precincts in which they reside to determine whether or not the signers of such petition are in fact qualified voters of the county or political subdivision at the time such petition is presented, and to certify to the Commissioners' Court the number of qualified voters signing such petition. No signature shall be counted where there is reason to believe that it is not the actual signature of the purported signer. The minutes of the Commissioners' Court shall record the date any such petition is presented, the names of the signers thereof, and the

action taken with relation to the same. No subsequent election upon the same issue in the same political subdivision shall be held within one (1) year from the date of the preceding local option election in any county or political subdivision thereof."

In a proceeding to contest a local option election in the case of Hutson v. Smith, 191 S.W. (2d) 779, the contestee urged that the petition was insufficient to confer jurisdiction upon the Commissioners' Court to call a local option election because it was not serially numbered in compliance with Article 666, Sec. 32, Penal Code. The County Clerk issued seventeen copies of the petition and numbered the copies 1 through 17. The question as to whether the numbering of the petition in such manner was defective was not determined by the appellate court, but the court had this to say, and we quote portions of the opinion as follows:

". . . But whether right or wrong, if the petition was defective in respect to being properly serially numbered, we do not believe that the petition was thereby rendered a nullity. The first copy issued bore the number 1. If other copies were defective because they bore the numbers 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, and 17, respectively, such defect was apparent upon their face. The Commissioners' Court with full knowledge of everything shown by the face of the petition ordered the election. . . .

"Here the Commissioners' Court, in the exercise of its duty, found that the petition complied with the statutory requirements. The petitioners who signed the various copies of the petition were qualified voters, and entitled to have the election called. If the petition was defective, it was defective as to form only, and such defect was shown upon its face. The Commissioners' Court had jurisdiction to determine whether such petition was a proper one to impose upon it the duty of calling the election. . . . Had the Commissioners' Court found the petition was defective in that it was not serially numbered, and had the petitioners applied to the district court for a mandamus to compel the issuance of an order for an election, a different question would be presented. In any case we hold that the defect in the petition, if it was a defect, did not render the petition a nullity, and that the court had jurisdiction to consider said petition, and it was its duty to do so, and said court had the capacity to determine erroneously as well as correctly whether the petition was defective as to form. Since the Commissioners' Court had jurisdiction to order the election, and did order the election after affirmatively finding that the petition conformed to the statutory requirements as to form, we believe that, if the petition was defective as to form (that is, as to being correctly numbered serially), that it was sufficient to invoke said Commissioners' Court's jurisdiction in the premises. . . .

". . . Failure to number the petition serially, if it was not numbered serially, was a mere irregularity which occurred prior to the election and could have had no effect on its outcome. . . . The court had jurisdiction independent of the petition to order the election and with full knowledge of defects apparent upon the face thereof, therefore, its order for the election constituted a waiver of apparent defects in the petition. . . .

". . . We make this distinction between the requirements relative to the mandatory provision that the petition shall be serially numbered and the mandatory provision that the order shall state the issue or issues to be voted on in the election. The petition is addfessed to the Commissioners' Court, and if with full knowledge it sees fit to order an election, which it had the jurisdiction to order at all events, no one else can question the sufficiency of the petition to support an order which the court could have made in the absence of a petition. In other words, a Commissioners' Court can treat any petition as sufficient having full knowledge of all facts."

In the case of Powell v. Bond, 150 S.W. (2d) 337, the court held that when the Commissioners' Court found the petition for an election to be sufficient and signed by ten (10) per cent of the qualified voters based on the vote for Governor at the last preceding general election, the petition confers jurisdiction upon the court to order the election and it is mandatory that the Commissioners' Court order the election upon the petition.

The petition mentioned in Article 666, Sec. 32, is not a prerequisite for an order by the Commissioners' Court for an election, because the court may order an election on its own motion. If the court orders an election upon a petition, it appears from the opinion in the case of Hutson v. Smith quoted above, the appellatecourts would hold that if the petition issued by the County Clerk was defective as to form and was not strictly in compliance with the statute, but stated the issue or issues to be voted on, giving the court full knowledge of the desires of the signers of the petition, and was signed by the required number of qualified voters, the Commissioners' Court may treat the petition as being sufficient and its order for an election would constitute a waiver of trivial defects in the petition.

In view of the cases cited above, in answering your questions, we are of the opinion that it is not mandatory that the court order an election based on the petition set out in your letter. However, if the court ordered an election based on the petition, the election would be valid. We are also of the opinion that the clerk is required to check the names of the signers of the petition to determine wither or not they are qualified voters, even though their addresses ware not shown on the petition.

Trusting that we have satisfactorily answered your questions, we are

Yours very truly

LWW:zd:egw
APPROVED:
Opinion Committee
By G W B - Chairman

ATTORNEY GENERAL OF TEXAS

By /s/ Louis W. Woosley

Louis W. Woosley
Assistant

APPROVED MAY 22, 1946
/s/ Carlos Ashley
FIRST ASSISTANT
ATTORNEY GENERAL